UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUJAAHID HARRIS, | Case No.   1:23-cv-01502-JLT-EPG |
| Plaintiff, | |
| v. | ORDER OVERRULING IN PART DEFENDANTS' OBJECTION TO PRODUCTION OF CERTAIN DOCUMENTS |
| VALLADOLID, et al., | |
| Defendant. | (ECF No. 34) |

Plaintiff Mujaahid F. Harris is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 5). In his complaint filed on October 23, 2023, Plaintiff alleged that his constitutional rights were violated during an incident where correctional officers did not follow the special cuffing procedure granted to Plaintiff due to his physical impairments. (ECF No. 1).

Now before the Court are Defendants' Notice of Compliance with the Court's Order for the Parties to Exchange Documents, and Objections to the Production of Certain Documents (ECF No. 34), which claims that all documents related to the institution's investigation into Plaintiff's grievance should be withheld from production, because the investigation is confidential and related documents are protected by the official information privilege. Plaintiff has filed a response to Defendants' objections, arguing that summaries of the events do not detail any information about the investigatory techniques or process, and the photographs of Defendant Valladolid do not jeopardize the security of the institution. (ECF No. 45, at p. 5-6).

Having reviewed the documents submitted for *in camera* review, the Court finds that Defendants' objections to production is overruled in part.

## I.    BACKGROUND

This case proceeds on Plaintiff's Eighth Amendment excessive force claims against Defendant Valladolid, Ramirez, Forbes, and Patrick – Correctional Officers at California State Prison, Corcoran (CSPC) – for failing to follow the special cuffing protocol granted to Plaintiff due to his shoulder impairment, and Plaintiff's Eighth Amendment failure to protect claims against Defendant Butler and Osmer – Sergeant Correctional Officers at CSPC. (ECF No. 9.)

The Court opened discovery on November 18, 2024. (ECF No. 21). To secure the just, speedy, and inexpensive disposition of this action, the Court directed the parties to exchange certain documents, including "[w]itness statements and evidence that were generated from investigation(s) related to the event(s) at issue in the complaint, such as an investigation stemming from the processing of Plaintiff's grievance(s)." (*Id.*, at 2). The Court cited Supreme Court precedent stating that "proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *See Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006).

On March 20, 2025, Defendants filed their Notice of Compliance with the Court's Order for the Parties to Exchange Documents, and Objections to the Production of Certain Documents. (ECF No. 34). In that document, Defendants object to production of certain documents gathered as part of the investigation into Plaintiff's grievance regarding his allegation that he was subjected to excessive force. (*Id.*, at 1-2). In particular, Defendants object to production of witness statements because "the documents contain information that would reveal techniques used to investigate inmates and parolee complaints against staff," and disclosure of such techniques "would undermine the effectiveness of investigations into staff misconduct as staff and inmate witnesses would be more reluctant to candidly provide information if they knew this information would be disclosed." (*Id.*, at p. 2).

\\\

Defendant also submitted to the Court the Declaration of P. Williams, the Litigation Coordinator at CSPC.  That declaration describes the search for documents responsive to the Court's order, the documents located related to the institution's investigation of Plaintiff's allegations, and the institution's designation of all documents as confidential.  It also describes the risk that such documents could be given to other inmates, and the concern that disclosure would reveal investigation techniques and types of corrective measures, which "may endanger the safety of other persons (staff and inmates alike), and jeopardize the security of the institution." In particular, Williams notes that disclosure "would inhibit staff witnesses from freely providing information or allowing photographs of their injuries to be taken."[1]

Defendants submitted the withheld documents to the Court for *in camera* review, and provided Plaintiff and the Court with a privilege log of the documents, as required by the Court's Discovery and Scheduling Order.  Specifically, Defendants submitted the following documents for *in camera* review:

- AGO 107-116: The Incident Commander's Review and the Use of Force Critique for Incident Log No. 44970;

- AGO 117-119: CDCR 3014 Report of Findings-Inmate Interview for Incident Report Log No. 44970, regarding Interview of Plaintiff;

- AGO 120-121: Photographs of Officer O. Valladolid for Incident Report Log No. 44970;

- AGO 122-131: Allegation Investigation Unit, Administrative Investigation Report for Grievance Log. No. 307260, AIU Case No. C-AIU-COR-8806-22; and

- The Audio-Recorded Interviews of Defendants M. Ramirez, C. Forbes, T. Patrick, and O. Valladolid for AIU Case No. C-AIU-COR-8806-22.

Defendants subsequently also submitted a copy of the Body-Worn Camera Footage from the Control Booth Officer from the date of the incident.

Plaintiff filed a response to Defendants' objections. (ECF No. 45). Plaintiff argues that the statutes cited in the privilege log by Defendants are inapplicable, and much of the information can be disclosed without identifying its source. (*Id.*, at p. 1-2). Plaintiff further argues that any person

---

[1] This Declaration was not filed on the docket, but based on Plaintiff's references to it, it appears that Defendants served it on Plaintiff.

can view their own information. (*Id.*, at p. 3). Responding to the Declaration of P. Williams, Plaintiff argues that summaries of the events do not detail any information about the investigatory techniques or process, and the photographs of Defendant Valladolid do not jeopardize the security of the institution.  (*Id.*, at p. 5-6).

## II.    LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Questions of privilege in federal civil rights cases are governed by federal law. Fed. R. Evid. 501; *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 511 F.2d 192, 197 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976).

The "common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure." *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975) (citations omitted). The Ninth Circuit has since followed *Kerr* in requiring in camera review and a balancing of interests in ruling on the government's claim of the official information privilege. *See, e.g.*, *Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976) ("[A]s required by *Kerr*, we recognize 'that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.'") (quoting *Kerr*, 426 U.S. at 406; *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir. 1990) ("Government personnel files are considered official information. To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery.") (internal citations omitted).

## III.    ANALYSIS

The Court has reviewed the documents provided for *in camera* review with these legal standards in mind, and overrules Defendants' objections as to certain portions of these documents described below.

The Court finds that interviews and summary of interviews of the Plaintiff himself or of any Defendant in this case, summary of body worn camera footage, and other direct evidence or

summary of that evidence should be produced. These include the summary of the interviews and evidence contained in the following documents:

- AGO 108-109: Section 1 describing "the totality of circumstances that required force to be utilized"; Section 2 regarding "what steps were taken to avoid and/or minimize the need for the force used;" and Section 4 regarding "inmate injuries due to force used."

- AGO 117: Section 3 regarding summary of inmate interview;

- AGO 123-130: the following sections of the Internal Affairs Administrative Investigation Report: "Review Audio Visual Surveillance System/Body Worn Camera; Interview of Inmate William Harris; Interview of Witness, Correctional Officer Michael Ramirez; Interview of Witness, Correctional Officer Cody Forbes; Interview of Witness, Correctional Officer Tim Patrick; Interview of Subject, Correctional Officer Oswaldo Valladolid.

These documents may be produced in redacted form to exclude any internal analyses or opinions regarding the evidence collected, as well as information regarding the procedures or staff conducting the investigation.[2] The Court finds that the institution's analyses and opinions are not directly relevant to the case because they are not direct evidence of what took place, and disclosure could risk the safety and security concerns identified in Defendants' objections.

The Court has also evaluated Defendants' objections and finds that the risks identified in those objections do not outweigh the benefits that disclosure of these documents and recordings would have to this case. The interviews are short and straightforward, and do not reveal any confidential techniques that could undermine the effectiveness of such investigations in the future. Moreover, the Court is only requiring production of the interviews themselves, and not any related discussion or evaluation of those summaries that could reveal the institution's techniques or impressions. Nor does the Court agree that disclosing such interviews would cause

---

[2] Notably, the Court's discovery order required Defendant to produce "[w]itness statements and evidence that were generated from investigation(s) related to the event(s) at issue in the complaint, such as an investigation stemming from the processing of Plaintiff's grievance(s), if any," and noted that "Defendant(s) only need to produce documents such as a Confidential Appeal Inquiry or a Use of Force Critique to the extent those documents contain witness statements related to the incident(s) alleged in the complaint and/or evidence related to the incident(s) alleged in the complaint that will not be provided to Plaintiff separately." (ECF No. 28, at p. 2-3).

1   witnesses in the future to be less truthful in similar investigations.  On the contrary, the fact that

2   witness statements may be used later in court would seem to encourage candor in such situations.

3   Moreover, these statements are made by the parties themselves, so Plaintiff already knows the

4   identity of these individuals and their general role in this incident.

5        The Court also overrules Defendants' objection to production of the audio of the

6   interviews of the Defendants regarding this incident.  Again, such recordings are direct and highly

7   relevant evidence of the incident in question, and could be used as evidence at summary judgment

8   or trial in this case.  Nor does the Court believe that potential risks identified by Defendants

9   outweigh the benefits of such disclosure.[3]

10       Thus, the Court finds that disclosure of these portions of documents and recordings would

11  promote the truth-finding process because they contain details of the parties' actions and

12  statements recorded close to the time that the relevant events occurred. *See Woodford*, 548 U.S. at

13  94–95. These benefits of disclosure outweigh the potential disadvantages contended by the

14  Defendant. *See Sanchez,* 936 F.2d at 1033-34.

15       However, the Court sustains Defendants' objection to production of the remaining

16  materials, which include internal process documents such as checklists as well as the institution's

17  internal evaluations and findings from that investigation.  Such internal evaluations are not direct

18  evidence of what occurred, and thus the potential risks from disclosure outweigh the benefit to the

19  case.

20       The Court also sustains Defendants' objection to production of the Body-Worn Camera

21  Footage from the Control Booth Officer from the date of the incident.  The Court has reviewed

22  this footage and finds that it provides limited evidence of the incident, which is for the most part

23  not captured in this footage.  Moreover, it reveals aspects of the control booth whose disclosure

24  could pose a security and safety risk for the institution.

25       Furthermore, the Court sustains Defendants' objection to production of any personal

26  information regarding the staff who assisted in the investigation, because such information is not

27  _____

28  [3] To the extent Plaintiff is unable to obtain and review such files for safety and security reasons in custody,
    Defendant may make available these recordings for Plaintiff's review, and facilitate the filing of such
    documents with the Court if requested by Plaintiff in connection with future proceedings.

relevant to the case.  Thus, to the extent the documents listed above contain any personal

information about staff who conducted the investigation, that information may be redacted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' objection to production of certain documents (ECF

No. 34) is overruled in part.  No later than 30 days from the date of this order, Defendants shall

provide the following documents to Plaintiff, with appropriate redactions described below:

- AGO 108-109: Section 1 describing "the totality of circumstances that required force
  to be utilized"; Section 2 regarding "what steps were taken to avoid and/or minimize
  the need for the force used;" and Section 4 regarding "inmate injuries due to force
  used."

- AGO 117: Section 3 regarding summary of inmate interview;

- AGO 123-130: the following sections of the Internal Affairs Administrative
  Investigation Report: "Review Audio Visual Surveillance System/Body Worn
  Camera; Interview of Inmate William Harris; Interview of Witness, Correctional
  Officer Michael Ramirez; Interview of Witness, Correctional Officer Cody Forbes;
  Interview of Witness, Correctional Officer Tim Patrick; Interview of Subject,
  Correctional Officer Oswaldo Valladolid.[4]

Defendant shall also make the following data files available for Plaintiff to review, and

coordinate the filing of such evidence with the Court in the future upon request of Plaintiff:

- The Audio-Recorded Interviews of M. Ramirez, C. Forbes, T. Patrick, and O.
  Valladolid for AIU Case No. C-AIU-COR-8806-22.

\\\

\\\\

\\\\

\\\

---

[4] These documents may be produced in redacted form to remove any personal information regarding the
investigation staff.  Moreover, only the portions of the documents described above, containing direct
evidence and summary of witness accounts of the incident or other direct evidence, shall be produced.
Defendants may redact the institution's description of the process, analysis, and conclusions of
investigating staff.

Additionally, Defendant shall file a notice of compliance with the Court concurrently with production to Plaintiff.

IT IS SO ORDERED.

Dated:   **June 4, 2025**                    /s/ _Erica P. Grosjean_

UNITED STATES MAGISTRATE JUDGE