UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUJAAHID F. HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>O. VALLADOLID, *et al.*,<br><br>    Defendants. | Case No. 1:23-cv-01502-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT CORRECTIONAL OFFICER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES BE DENIED<br><br>(ECF No. 39)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Mujaahid F. Harris is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's First Amended Complaint arises from events on September 13, 2022,[1] while he was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at California State Prison ("CSP"), Corcoran. (ECF No. 8, at pp. 2-4). Plaintiff's First Amended Complaint proceeds on Plaintiff's Eighth Amendment excessive force claims against Defendants Valladolid, Ramirez, Forbes, and Patrick, and Eighth Amendment failure to protect claims against Defendants Butler and Osmer. (ECF No. 9).

///

---

[1] In his initial complaint, Plaintiff alleges that the incident occurred on September 13, 2022. (ECF No. 1, p. 5). However, in his First Amended Complaint, Plaintiff states that the incident took place on September 18, 2022. In his underlying grievance no. 307260, Plaintiff reported the incident took place on September 13, 2022 (ECF No. 39-5, p. 10), and Defendants state the same. (ECF No. 39-4, p. 3). As such, the Court will use September 13, 2022, as the incident date.

1

Before the Court is a motion for summary judgment filed by Defendants Ramirez, Forbes, Patrick, Butler, and Osmer ("Correctional Officer Defendants"). Correctional Officer Defendants argue that Plaintiff failed to exhaust administrative remedies before filing this lawsuit against them. (ECF No. 39).[2]

For the following reasons, the Court will recommend that Correctional Officer Defendants' motion for summary judgment be denied.

I.   **PLAINTIFF'S COMPLAINT**

This case proceeds on Plaintiff's First Amended Complaint filed on February 2, 2024. (ECF No. 8). Plaintiff alleges as follows:

Following a failed left "shoulder replacement," Plaintiff has permanent "special cuffing" requirements using waist chains. (*Id.*, at p. 3). Despite this, on September 13, 2022, Officer Valladolid wrenched Plaintiff's left arm behind his back. (*Id.*). At the time, Plaintiff was holding his left arm to his chest while Officers Valladolid and Ramirez tried to pull Plaintiff's arms apart. (*Id.*). Officer Valladolid was on Plaintiff's left, and Officer Ramirez was on Plaintiff' right. (*Id.*). Officer Patrick was at Plaintiff's legs, pressing on his lower back. (*Id.*). While he was in the prone position, Officer Forbes was near Plaintiff's head, pressing down on Plaintiff's upper back and neck and using his free hand to pull Plaintiff's arm out from underneath Plaintiff's body. (*Id.* at 3, 5).

Plaintiff yelled and pleaded with the officers, telling them that he cannot put his arms behind his back and that he is "special cuff" due to his shoulder impairment. (*Id.*, at p. 5). Plaintiff pleaded with Sergeants Butler and Osmer to intervene before Officers Valladolid, Ramirez, Patrick and Forbes caused more damage to Plaintiff's arm. (*Id.*).

Plaintiff was led to believe that special cuffs would be used because Sergeant Butler instructed Officer Patrick to get the chains. (*Id.*). Plaintiff was asked to put his arms to the side, and he reiterated that he could not put his arms behind him. (*Id.*). Someone said, "okay, okay," but when Plaintiff released his grip, Officer Valladolid wrenched Plaintiff's left arm

---

[2] Defendant Valladolid concedes that Plaintiff's claims against him have been exhausted.

back and up behind his back, toward his shoulder blades. (*Id.*). As a result of this incident, Plaintiff has permanent nerve damage in his left arm and shoulder. (*Id.*).

Following the Court's Screening Order, Plaintiff proceeds on Eighth Amendment excessive force claims against Defendants Valladolid, Ramirez, Forbes, and Patrick and Eighth Amendment failure to protect claims against Defendants Butler and Osmer. (ECF No. 9, at p. 9).

## II. CORRECTIONAL OFFICER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Correctional Officer Defendants' Motion and Arguments

On April 16, 2025, Correctional Officer Defendants filed a motion for summary judgment, arguing Plaintiff failed to exhaust administrative remedies against them because, with the exception of Officer Valladolid, Plaintiff failed to identify the correctional officers by name in his grievance. (ECF No. 39).

#### 1. Plaintiff's Grievances

Correctional Officer Defendants state that Plaintiff filed three grievances related to the incident: the first on September 21, 2022 (grievance no. 307260), the second on October 11, 2022 (grievance no. 315311), and the third on October 18, 2022 (grievance no. 317948). (ECF No. 39-5, at ¶7). Correctional Officer Defendants admit that Plaintiff properly exhausted his first grievance no. 307260. (ECF No. 39-1, at pp. 10-13).

As for the other two grievances, Defendants argue that Plaintiff's second grievance (no. 315311) addressed his Serious Rules Violation Report ("RVR") following the incident and was rejected as concerning "an anticipated policy, decision, action, condition or omission by the Department or departmental staff." (ECF No. 39-5, at pp. 14-16). Plaintiff's third grievance (no. 317948) alleged excessive force used against him in separate incidents on November 15, 2020, May 2, 2022, and by Officer Valladolid on September 13, 2022. (*Id.*, at pp. 21-25). His third grievance was rejected on all three claims for being substantially duplicative of prior claims. (*Id.*, at pp. 26-27).

///

3

**2. Grievance No. 307260**

Correctional Officer Defendants argue that, while grievance no. 307260 identified Officer Valladolid by name, Plaintiff did not identify any of the Correctional Officer Defendants by name. (*Id.*, at pp. 10-13). They argue that "[p]rison officials…were not put on notice about [Plaintiff's] current complaints against Ramirez, Forbes, Patrick, Osmer, and Butler." (*Id.*, at p. 12). Accordingly, Correctional Officer Defendants argue that Plaintiff failed to exhaust his administrative remedies against them, and the case should be dismissed against them and proceed solely against Officer Valladolid. (*Id.*, at pp. 12, 14).

**B.   Plaintiff's Opposition**

On May 23, 2025, Plaintiff filed his opposition to Correctional Officer Defendants' motion for summary judgement. (ECF No. 50). Plaintiff asserts that he filed only two grievances related to the incident, including the first grievance no. 307260 and the second grievance no. 315311. (*Id.*, at p. 3 (Plaintiff's letter received by the CDCR on October 18, 2022, should not have been considered a grievance; "Plaintiff did not submit grievance 317948.")).

Turning to the first grievance no. 307260, Plaintiff argues that he sufficiently put the prison on notice of his claims. Plaintiff argues that he "accused Officer Valladolid, the 2nd officer, the two [r]esponding officers, and the sgt. [Sergeant] of 'Assault and Excessive Force….'" (*Id.*, at p. 3). Plaintiff argues that he did not know the names of the Correctional Officer Defendants described in his grievance until he was served with the RVR and incident package following the incident. (*Id.*, at pp. 4, 6). Plaintiff now argues that in "Line Two [of his grievance], I refer to 'the 2nd officer (Ramirez), Line 14, I refer to Ramirez as the other officer (only two officers work the floor)…I refer to Forbes and Patrick as the responding officers in Line 9 [through] 15…'someone put leg chains on me' refers to Patrick, Line 25 refers to Ramirez, Forbes and Patrick." (*Id.*, at pp. 5-6). With these descriptions, Plaintiff

argues that he sufficiently put the prison on notice of his claims and exhausted his administrative remedies as to the Correctional Officer Defendants. (*Id.*, at p. 6).[3]

### III. LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

"A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at

---

[3] Correctional Officer Defendants did not file a reply brief.

387; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"); *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) ("A motion for summary judgment may not be defeated, however, by evidence that is merely colorable or is not significantly probative.") (citation and internal quotation marks omitted); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").

"All reasonable inferences must be drawn in the nonmoving party's favor, but such 'inferences are limited to those upon which a reasonable jury might return a verdict.'" *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.").

**B. Exhaustion Under the Prison Litigation Reform Act**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199–1201 (9th Cir. 2002) (*per curiam*). The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *Ross v. Blake*, 578 U.S. 632, 643 (2016). "Under the PLRA, a grievance suffices if it alerts the

prison to the nature of the wrong for which redress is sought." *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016).

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

## IV. STATEMENT OF FACTS

The Court has reviewed the evidence submitted by the parties, and finds that the following facts are undisputed:

Plaintiff was detained at CSP-Corcoran on September 13, 2022. (ECF No. 39-5, p. 10; ECF No. 39-4, at p. 3). On February 20, 2022, Plaintiff submitted grievance no. 307260, which stated:

> Assault and Excessive Force By Peace Officer: Tues, Sept. 13th, 2022 (@10:50AM) who in 3AO4 officer's office getting Request for Interview slips as I'm responding to the 2nd officer's comments, Officer Valladolid told me to leave the office at the same time he attempted to "push me" from the office. Reflexively I moved to block his hand from striking me. He then grabbed my right arm ad we back[ed] out of the office. He instructed me to turn around and cuff up. As I attempted to turn to my left toward the grill gate, C/O Valladolid prevented me from turning by holding onto my right arm while he pressed himself upon me. He then proceeded to slam me into the grill gate, pressing my head against the gate. I then grabbed the grill gate with my right hand, bracing and pushing my head off of the grill gate. All the while telling him that I am special cuff because of shoulder injury. He requested I let go of the gate and I told him not if he continues to press me into the gate. So he attempted to take my hand off – wasn't strong enough. Then the other officer came and attempted to take my hand off while C/O Valladolid wrapped his arms around me trying to wrench me off. They wasn't [sic] strong enough. The second officer went down to my feet to try and lift me up. After several failed attempts, I allowed them to take me to the ground in lieu of getting my head banged into the grill or attempting to regain balance and having 2nd C/O claim I battered him. As I'm on the ground, they are trying to pull my arms behind my back, knowing that I am special cuff because of shoulder injury and not mobility reasons. I have committed myself to not becoming violent to dealt with issues. But I be [sic] damned if I'm not going to protect myself through means that are not violent. I protected my arm by holding onto it with my right. Officer Valladolid grabbed my head and banged it to the ground and began pressing my head to the ground with all his body weight. At this point, I started to get up and get them off of me. I'm not sure if that was the

>reason he let go or the fact that responding officers had arrived but he resumed trying to pull my arm behind my back as I continued to inform them that I can't put my arm behind my back. As the responding officers were just standing there observing I mentioned to them that they know I am special cuffs "why are they not doing anything" (Sgt. Norman, C/O Shelby I was able to see)[.] Another officer got down to assist and someone (C/O) said get the "chains." Shortly thereafter, someone put leg chains on me and I was told to put my arms to the side. I again stated that I am special cuffs, I cannot put my arm behind because of the failed total shoulder replacement. One of the officers stated, okay, all you have to do is put your rm to the side. So I did. C/O Valladolid snatched my left arm and intentionally with maliciousness, intending to cause harm and he wrenched my arm back behind me and up near my shoulder blades causing a grinding sensation in my shoulder and something popped. I couldn't do anything but scream and yell, especially with 3 people on my back. The video shows his deliberate intent to cause me harm. – This is the second incident where staff attempted to cuff me. After the first, it was stated "that now we know you are special cuff due to shoulder." Same place they got the leg chains (4 Bldg control) waist chains are there. This affirms maliciously caused me harm. Charges & compensation warranted.

(*Id.*, p. 10-11).

On October 13, 2022, the CDCR Office of Grievances ("OOG") issued a final decision as to grievance no. 307260, confirming that Plaintiff's allegations of staff misconduct would be referred outside the grievance and appeal process to the appropriate CDCR authority. (*Id.*). The OOG confirmed Plaintiff had exhausted administrative remedies regarding grievance no. 307260. (*Id.*).

Plaintiff filed a second grievance related to the September 13 incident. (*Id.*, at p. 14). Plaintiff was served with an RVR, and he filed grievance no. 315311 to address his alleged inability to view the "evidence against [him] by the disciplinary officer Patrick…." (*Id.*). The OOG rejected grievance no. 315311 because it concerned "an anticipated policy, decision, action, condition or omission by the Department or departmental staff." (*Id.*, at p. 16).

Plaintiff filed his initial complaint on October 23, 2023. (ECF No. 1).

## V.   ANALYSIS

As all parties agree that Plaintiff fully exhausted grievance 307260,[4] the Court first

---

[4] In support of their motion for summary judgment, Correctional Officer Defendants submit the declaration of A. Vasquez, a Correctional Counselor II assigned as Grievance Coordinator at CSP-

8

looks to whether that grievance exhausted Plaintiff's claims against the Correctional Officer Defendants.

Correctional Officer Defendants argue that although grievance 307260 identified the relevant use of force, it did not exhaust administrative remedies against them because it only identified Officer Valladolid by name.

The Court has reviewed the grievance in light of the relevant legal standards and recommends finding that it sufficiently identified the Correctional Officer Defendants to exhaust Plaintiff's claims against them. As set forth above, the grievance claims that correctional officers other than Officer Valladolid were involved in the use of force. In addition to Officer Valladolid, Plaintiff's grievance describes the "other officer" who joined Valladolid in attempting to handcuff the Plaintiff, along with the "second officer" who went down to Plaintiff's feet to try to lift him up. The grievance also describes being on the ground while "they" were trying to pull his arms behind his back, knowing he needed special cuffs. Plaintiff also describes "responding officers" that knew he required special cuffs but were "just standing there observing" and "not doing anything" to prevent the Plaintiff from being handcuffed behind his back. Plaintiff alleged this incident as the second time "staff attempted to cuff me."

Under the PLRA, Plaintiff's grievance is sufficient to alert the prison to the nature of Plaintiff's allegations and to "alert prison officials to a problem." *Reyes*, 810 F.3d at 659.

> Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.

---

Corcoran. (ECF No. 39-5, at ¶2). Vasquez confirms that Plaintiff submitted his grievance no. 307260 and attaches a copy of the grievance and OOG decision as Exhibit 2 to his declaration. (*Id.*, at ¶ 7).

*Id.* "Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies." *Id.*, at 958.  Plaintiff was not required to provide personal notice to each Correctional Officer Defendant that he might sue. *Id.*; *see McClure v. Chen*, 246 F. Supp. 3d 1286, 1294 (E.D. Cal. 2017) (denying summary judgment because grievance sufficiently put officials on notice of the nature of the wrong alleged to exhaust administrative remedies); *see also Hernandez v. I.S.U.,* No. 21-CV-04368-HSG, 2025 WL 964688, at *11 (N.D. Cal. Mar. 31, 2025) (finding grievance describing officer conduct sufficient notice to prison officials to exhaust administrative remedies); *Washington v. Salinas Valley State Prison*, No. 22-CV-05831 BLF (PR), 2024 WL 2306286, at *8 (N.D. Cal. May 21, 2024) (finding grievance provided sufficient information that specific staff could be identified through investigation and therefore plaintiff exhausted administrative remedies against one officer defendant).

Because grievance 307260 adequately alerted prison officials to the problem at issue in Plaintiff's claims against Correctional Officer Defendants, the Court recommends denying their motion for summary judgment.

## VI.  CONCLUSION AND RECOMMENDATIONS

For the reasons explained above, IT IS RECOMMENDED that:

(1) Correctional Officer Defendants' motion for summary judgment (ECF No. 39) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

\\\

\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 23, 2025**                    /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE